Claiborne T. BAYE

v.

Lieutenant General David WADE, Individually and as commander of the Louisiana National Guard, et al.

Civ. A. No. 71–2225.

United States District Court, E. D. Louisiana.

July 26, 1976.

Lawrence Blake Jones, New Orleans, La., for plaintiff.

Ford J. Dieth, Asst. U. S. Atty., New Orleans, La., for defendant.

SEAR, District Judge:

Claiborne T. Baye was a Major on full time, active duty in the Louisiana Army National Guard. In addition to his regular military duties, Baye was employed by the National Guard in a separate civilian capacity as a flight instructor. Under the provisions of the National Guard Technicians Act of 1968,[1] the lowest rank eligible to qualify for such civilian employment was Warrant Officer. In November 1970 Baye decided that in order to best fulfill his flight instruction commitments, he should surrender his commission as Major, which required that he perform extensive military duties, and assume the rank of Warrant Officer and still remain qualified for the civilian position. As a Warrant Officer, Baye would have been able to perform his military duties entirely on week-ends, leaving him free to devote his full time energies during the week to his employment as flight instructor.

Following Baye's voluntary reduction in rank, defendant, Adjutant General David Wade discharged Baye from his civilian position as flight instructor and gave as his reason his policy that required civilian technicians serving as flight instructor also hold

1. 32 U.S.C. § 709.

command positions in the military arm of the Guard, a rank Baye had just resigned. On December 14, 1970, Baye received a written "Notice of Separation" from the office of the Adjutant General which notified him that his discharge became final January 15, 1971. Baye timely appealed his discharge to the appropriate military authority, who was the defendant, Adjutant General Wade who had discharged him. As one might suspect, upon review, Wade found the discharge had been proper.

Thereafter, Baye brought this suit in which he claims that he was denied due process of law. Specifically, he contends that National Guard Regulations require that he be given advance written notice of a proposed discharge and that these Regulations had not been complied with. The case progressed in the usual manner until, upon the retirement of the then sitting judge of this section of Court, it was temporarily re-allotted to another section, and in November 1975 a motion by the plaintiff for summary judgment was argued before and ruled upon by Chief Judge Heebe to whom the case was temporarily assigned.

After an initial determination that the Court had jurisdiction over the controversy despite its military nature,[2] Judge Heebe examined the substance of Baye's allegations. Firstly he held that, according to the National Guard Regulations, at the time Baye resigned from his position as a full time officer he was not entitled to notice that if he did so he would be discharged from his job as flight instructor. We note that at no time did Judge Heebe indicate that Baye was entitled to no notice at all. In fact, he clearly stated that the regulations provide for notice once "the National Guard decides what it is going to do." In other words, the National Guard is not required to counsel its employees as to the ramifications of every possible action they may take before they take it. Once an employee has acted, however, and the Guard determines that such action is a cause for discharge, *at that point* the National Guard must give the notice specified by the regulations.[3]

Secondly, my Brother Heebe found that Baye had indeed been denied due process since his appeal from discharge had not

---

2. *Mindes v. Seaman,* 5 Cir. 1971, 453 F.2d 197.

3. ADVERSE ACTION PROCEDURES. There are specific steps required by law and implementing regulations that must be followed by management when taking adverse personnel actions against a technician which results in his (1) discharge; (2) suspension; (3) furlough without pay for 30 days or less; or (4) reduction in basic compensation or rank. These procedures insure that the technician is protected from capricious, arbitrary, and unreasonable actions by management by requiring that he be given an advance notice of the proposed action. This notice will set forth specifically, and in detail, the factual reasons for the action; allow the technician an opportunity to submit evidence to refute or deny the reasons given, and require, after consideration of the technician's reply, that he be given a final decision stating the specific reasons for any action that is taken. The technician has the right to appeal any adverse action to the State adjutant general of the jurisdiction concerned. National Guard Regulations NGR 51/ANGR 40–01, Chapter 7, Section X, 7–40.

ADVANCE NOTICE REQUIREMENTS. *a. Purpose.* A written notice of the proposed action must be given to the technician. This notice will be in military letter format. The purpose of the advance notice is to explain the

action proposed, the reasons for it and to give the technician an opportunity to reply and have the reply considered before a final decision is made.

*b. Content.* The following are the specific points of information required in each advance notice:

(1) Statement of proposed action.

(2) Proposed date of action after receipt of notice.

(3) Statement of charges and reasons, specifically and in detail.

(4) Statement of right to reply and assurance that any reply will be considered.

*c. Who Signs the Notice.* The advance notice must be signed and dated by the adjutant general or his designee.

*d. Delivery of Notice.* Notices normally are delivered to the technician personally.

*e. Right to Reply.* A technician has a right to reply to any adverse action. He may reply orally, in writing, or both to any adverse action.

*f. Time Allowed for Reply.* The time allowed a technician to reply should be sufficient to afford him an ample opportunity to prepare an answer and to obtain any affidavits he may wish to submit to refute the charges. National Guard Regulations NGR 51/ANGR 40–01, Chapter 7, Section X, 7–45.

been reviewed by an impartial hearing officer, but instead had been reviewed by the officer who fired him. The Chief Judge wrote that, "It is an elementary principle of due process that '[N]o man shall be a judge in his own cause.' *Bonham's Case,* 8 Co. 114a, 118a, 77 E.g.Rep. 646, 652 (1610)," and noted that in a similar due process challenge, a post-termination hearing before an impartial hearing officer was made available.[4] Judge Heebe ordered that such a hearing be held.

Instead of implementing Judge Heebe's order to determine the facts that led up to the plaintiff's discharge, the hearing officer rendered a written decision in the form of a military letter without holding the mandated hearing and erroneously concluded that the plaintiff's firing was procedurally defective because he had not received the required advance notice.

The decision of the hearing officer was properly reversed upon review by Colonel Scholl, a member of the staff of the Adjutant General. Colonel Scholl found that the hearing officer exceeded the scope of his authority by considering the procedural aspect of the termination, and had failed to carry out Judge Heebe's order to determine the facts. Colonel Scholl concluded that no advance notice of discharge was required in this particular case reasoning that, since the Adjutant General had appointed Baye in the first place, he could discharge him summarily.

In the meantime, the vacancy in this section of Court having been filled, the case was returned to us. Once more motions for summary judgment on behalf of both parties were argued and taken under submission by the Court.

■ After hearing argument and considering the facts and the law applicable to the case, we disagree with Colonel Scholl's reasoning and concur with Judge Heebe. At the time of his resignation of his commission as Major, the plaintiff was not entitled to notice that he would be discharged as flight instructor if he chose to resign. The plaintiff's resignation was a voluntary act, the consequences of which he should have investigated prior to resigning. It is undisputed that the National Guard may discharge its employees for good cause and that an infinite number of actions might constitute such cause. National Guard commanders are not clairvoyant. They cannot predict the voluntary acts of their employees and so warn them in advance that they may be discharged as a result of some voluntary act or whim. However, once the decision to terminate has been made, *then* an employee such as the plaintiff here is entitled to notice at least thirty days before the discharge becomes effective.

The regulations set forth the particular requirements of the advance notice[5]. They specify the form of the notice and what it must contain, ensuring that the employee fully understands the proposed action and the reasons for it, and giving him an opportunity to reply to the notice. Their purpose is to protect employees from "capricious, arbitrary, and unreasonable actions" by their superiors. By design, the regulations embody the basic requirements of constitutional due process: notice and an opportunity to be heard prior to a deprivation of property. They make no exception when the adverse action is taken by the appointing authority as argued by Colonel Scholl. Indeed, due process of law must be accorded in all but the most extraordinary situations.[6] Needless to say, Adjutant General Wade's initial hiring of Baye as flight instructor, does not qualify as an extraordinary circumstance which would allow the Adjutant General to discharge Baye without notice. Thus, we find that the National Guard regulations in question do require that a technician be given advance notice of

4.  *Davis v. Vandiver,* 5 Cir. 1974, 494 F.2d 830.

5.  See Note 3, *supra.*

6.  See *Fuentes v. Shevin,* 1972, 407 U.S. 67, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556, in which the Supreme Court listed the three factors which must be present in order for the requirements of due process to be averted.

separation, even when the discharging authority is also the appointing authority.

▮ However, we believe that the advance notice required by the regulations was given in this case. The letter of December 14, 1970, although labeled "Notice of Separation" rather than "Advance Notice of Separation" or "Notice of Proposed Action", satisfied the first three requirements of regulation 7–45. While the notice did not set forth Baye's appeal rights, it is perfectly obvious that Baye did in fact know of these rights since he did appeal the "Notice of Separation" on December 29, 1970. No prejudice resulted from the failure of the notice to spell out the appeal rights since plaintiff had actual knowledge of the right of which he was not informed.[7]

Further evidence that the letter constituted the "advance notice" required by the regulation is found in another section of the regulations. In the same chapter, regulation 7–48 provides that "A minimum of 30 calendar days advance notice must be given to technicians whose employment is being terminated." The letter of December 14, 1970 stated that the effective date of termination would be exactly 31 days after the date of that notice. We conclude, therefore, that the Adjutant General considered the letter to be the required advance notice, and was attempting to precisely comply with the procedure for issuing the advance notice.

▮ In view of the above, we hold that Baye was given the required advance notice of his discharge. However, Baye has not yet been accorded due process of law, because the evidentiary hearing before an impartial hearing officer ordered by Judge Heebe has not yet been held. The purpose of this hearing should be to determine whether Baye's discharge was arbitrary and capricious. This question is completely separate from the issue of the procedural correctness of Baye's discharge, and only the latter has been decided by Judge Heebe and this Court. As the Chief Judge stated in his earlier ruling: "[I]f the defendant's requirement that plaintiff remain as commanding officer was a secret, was applied only in the plaintiff's case or was totally unreasonable (plaintiff alleges it took three people to replace him), then defendant's action may have been arbitrary and capricious." These are the factual issues to be decided by the hearing examiner upon a full hearing of all relevant evidence and testimony.

Depending upon the outcome of the hearing Baye may be entitled to damages. Therefore,

IT IS ORDERED that an evidentiary hearing on the reasonableness of Baye's discharge be held by the Louisiana National Guard within thirty days, reserving Baye's right to present a damage claim to this Court should the hearing examiner decide in his favor. Counsel shall report the decision to this Court within five days after it is rendered, so that appropriate action may be taken.

▬▬▬▬▬

---

7. In the course of his letter reversing the decision of the hearing examiner Colonel Scholl stated:

"We must also note that paragraph 7–5, NGR 51 states that a technician's appeal should include the technician's request for a hearing if he desires one. Your letter of appeal dated 29 December 1970 did not request a hearing."

Although we find, *infra,* that Baye received substantial notice under the regulations, in view of the defendant's failure to inform him of his appeal rights, the National Guard cannot now preclude Baye's right to a hearing by asserting the merely formal deficiencies of Baye's appeal letter against him.